**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SEAN DANIELS,

                 Petitioner,                Case Number: 11-12199
                                                  Honorable Mark A. Goldsmith

v.

DUNCAN MACLAREN,

                 Respondent.

_____/

**OPINION AND ORDER**
**DENYING PETITION FOR WRIT OF HABEAS CORPUS AND**
**DENYING A CERTIFICATE OF APPEALABLITY**

Petitioner Sean Daniels, currently in the custody of the Michigan Department of Corrections, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his convictions for first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a), assault with intent to commit murder, Mich. Comp. Laws § 750.83, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b.

The petition raises ten claims. For the reasons explained below, the Court denies the petition. The Court denies a certificate of appealability and grants Petitioner leave to proceed on appeal in forma pauperis.

# I. BACKGROUND

The Michigan Court of Appeals provided this overview of the circumstances leading to

Petitioner's convictions:

> Defendant's convictions arise from the November 4, 2007, shooting death of Deshaun Williams and the nonfatal shooting of Jeanell Land, who was shot in the legs. Land, who had known defendant for approximately three months before the shooting, testified that defendant and Williams were involved in an argument after defendant discovered that his van was missing. During the argument, defendant told Williams, "If you got my van, motherf-----, I'ma shoot you in your face." Defendant then walked away and started frisking people who were outside to find a gun, and asked if they had a gun. Defendant said he was going to "shoot this motherf-----in the face. I'ma kill this motherf-----. He got my van." Defendant then called someone and asked for a gun. Williams and Land left the house in Land's car, but returned between 15 and 30 minutes later. Land heard defendant walk up to their car and ask, "You got my van, motherf-----?" Defendant then shot Williams and Land. Williams was shot three times, including once in the middle of the forehead, and Land was shot twice in the legs.

People v. Daniels, No. 287769, 2010 WL 571841, *1 (Mich. Ct. App. Feb. 18, 2010).

Petitioner was tried by a jury in Wayne County Circuit Court. He was convicted of first-

degree premeditated murder, assault with intent to commit murder, and possession of a firearm

during the commission of a felony, and, on July 29, 2008, sentenced to life imprisonment for the

murder conviction, twenty to forty years for the assault conviction, and two years' imprisonment

for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals. He claimed that he

received ineffective assistance of counsel and that insufficient evidence established his identity as

the shooter. The Michigan Court of Appeals affirmed Petitioner's conviction. Id.

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. He

raised the claims raised in the Michigan Court of Appeals and an additional claim regarding jury

instructions. The Michigan Supreme Court denied leave to appeal. People v. Daniels, 783 N.W.2d

376 (Mich. 2010).

Petitioner then filed a habeas corpus petition. He later moved for a stay to allow him to exhaust additional claims in state court (Dkt. 16), which the Court granted (Dkt. 17).

Petitioner filed a motion for relief from judgment in the trial court. He raised six claims for relief: (i) prosecutor's office and police department withheld exculpatory evidence, presented false testimony, and manufactured evidence; (ii) judicial misconduct; (iii) improper jury instructions; (iv) ineffective assistance of appellate counsel; (v) cumulative error denied Petitioner right to a fair trial; and (vi) good cause and prejudice excuse any default. The trial court denied the motion. See 1/23/2013 Opinion (Dkt. 32-3.)

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals. The Michigan Court of Appeals denied leave to appeal. People v. Daniels, No. 316725 (Mich. Ct. App. Oct. 29, 2013). Petitioner filed an application for leave to appeal in the Michigan Supreme Court, which was also denied. People v. Daniels, 846 N.W.2d 548 (Mich. 2014).

Petitioner moved to reopen this proceeding and to amend his petition. The Court granted the motion and allowed amendment of the habeas corpus petition. See 10/31/14 Opinion and Order (Dkt. 27). The habeas corpus petition raises these claims:

> I. Petitioner was denied the effective assistance of counsel at trial where counsel objected to the admission of autopsy photographs after the medical examiner's testimony and in front of the jury rather than in a motion in limine prior to trial.
>
> II. Petitioner was denied the effective assistance of counsel at trial where counsel had to be repeatedly reprimanded by the trial court for failing to examine witnesses properly and for arguing with the court.
>
> III. Petitioner was denied the effective assistance of counsel at trial where counsel failed to present an opening statement, then refused to continue and complete his closing statement. When he was advised of a time limit, counsel ended his closing without informing the jury of Petitioner's theory of the case.
>
> IV. There was insufficient evidence that Petitioner was the shooter.

V. Daniels was denied his Fifth Amendment rights by the Wayne County Prosecutor's office and Detroit Police Department withholding exculpatory evidence, use of false testimony and manufactured evidence by the prosecutor and medical examiner, Detroit Police, and complaining witness. Daniels is actually and legally innocent.

VI. The trial judge demonstrated judicial misconduct when he openly argued with defense counsel, imposed an exact time limit on defense counsel's closing argument, walking off the bench during defense counsel's closing arguments, and failed to recommend defense counsel continue representing Daniels during closing arguments, denying him a fair trial and his right to counsel.

VII. The trial court abused its discretion in managing the trial, depriving Daniels a fair trial and due process of law by giving improper and erroneous jury instructions as a whole.

VIII. Daniels was denied his right to effective assistance of appellate counsel by his appellate counsel's failure to raise trial counsel issues of error and issues pertaining to the trial judge's abuse of discretion.

IX. Daniels was denied a fair trial by cumulative error.

X. Daniels's conviction must be reversed where the state courts violated his right to equal protection where he demonstrated both good cause and prejudice under Michigan Court Rules and Statutes.

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

The Supreme Court has explained that a "federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Thus, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011).

The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102. Furthermore, pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. Habeas relief is not appropriate unless each ground that supported the state court's decision is examined and found to be unreasonable under the AEDPA.

See Wetzel v. Lambert, 132 S. Ct. 1195, 1199 (2012). "If this standard is difficult to meet, that is because it was meant to be." Harrington, 562 U.S. at 102. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from re-litigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id. Indeed, section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. at 102-03. A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford v. Viscotti, 537 U.S. 19, 24 (2002). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state-court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103. A state court's factual determinations are presumed correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. Id. Moreover, for claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

## III. ANALYSIS

### A. Ineffective Assistance of Trial Counsel Claims (Claims I-III)

Petitioner argues that he was denied the effective assistance of counsel when his trial attorney: (1) objected to the admission of autopsy photographs after the medical examiner's testimony and in front of the jury rather than in a pretrial motion in limine; (2) was repeatedly

reprimanded by the trial court for failing to examine witnesses properly and for arguing with the court; and (3) failed to present an opening statement and failed to complete his closing argument.

An ineffective assistance of counsel claim has two components. Strickland v. Washington, 466 U.S. 668 (1984). A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. Id. at 687. To establish deficient representation, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." Id. at 688. In order to establish prejudice, a petitioner must show that, but for the constitutionally deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different. Id. at 694.

The AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). The standard for obtaining relief is "'difficult to meet.'" White v. Woodall, 134 S. Ct. 1697, 1702 (2014), quoting Metrish v. Lancaster, 133 S. Ct. 1781, 1786 (2013). In the context of an ineffective assistance of counsel claim under Strickland, 466 U.S. 668 (1984), the standard is "all the more difficult" because "[t]he standards created by Strickland and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." Harrington, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

First, Petitioner argues that counsel was ineffective in objecting to the admission of autopsy photographs in the presence of the jury rather than a pretrial motion in limine. Dr. Cheryl Loewe, a deputy chief medical examiner for Wayne County, testified that she supervised the autopsy of the victim in this case. Dr. Loewe testified that, during the course of the autopsy, photographs

were taken to document the victim's wounds. She described the content of four exhibits which were composites of photographs of the victim. See 3/19/2008 Tr. at 62-63, Pg. ID 516-17 (Dkt. 8-6). The photographs were not published to the jury at that time. Id. At the conclusion of Dr. Loewe's testimony, defense counsel moved to exclude the photographs from evidence because they were unfairly prejudicial and unnecessary in light of Dr. Loewe's description of their content. Id. at 77-78, Pg. ID 531-32. Ultimately, the trial court admitted the photographs with some redactions.[1] Id. at 202, Pg. ID 656.

The Michigan Court of Appeals held that counsel was not ineffective in objecting to the admission of the photographs in the presence of the jury. The state court reasoned that defense counsel chose a strategy of trying to minimize the impact of the photographs by emphasizing, in front of the jury, that the photographs were offered for an improper purpose – to sway the jury on the basis of emotions rather than facts. Daniels, 2010 WL 571841 at *2. The state court found that this deliberate strategy of communicating to the jury "the importance of not being swayed by emotions and … cast[ing] defendant as a victim of an overzealous prosecutor" was a reasonable one. Id. In evaluating the reasonableness of the state court's decision, this Court finds particularly relevant the fact that autopsy photographs are frequently admitted into evidence in conjunction with a medical examiner's testimony. Given this and anticipating that the photographs would be admissible, it was reasonable for defense counsel to conclude that the best he could do was to use an objection in front of the jury as an opportunity to argue that an "intelligent jury" would not find the photographs useful. Id. The Court finds that the state court's decision was not an unreasonable application of Strickland.

---

[1] The nature and extent of the redactions are not evident from the record.

Second, Petitioner argues that his defense counsel's generally aggressive style worked to the defense's detriment. In closing argument, defense counsel characterized his own style as more Billy Martin than Sparky Anderson.[2] The trial transcript shows that defense counsel was assertive and argumentative in his questioning of witnesses and, at times, truculent in his interactions with the court. But defense counsel's style was not clearly ineffective. He persistently challenged the prosecution's case and did so within the bounds of acceptable courtroom decorum. The Court, therefore, finds that the Michigan Court of Appeals' decision that defense counsel's aggressive style was strategic and calculated to challenge the prosecution's case at every turn is not unreasonable.

Finally, Petitioner argues that defense counsel was ineffective in failing to present an opening statement and for discontinuing his closing argument after learning that he was subject to a time limit of which he was previously unaware. The Michigan Court of Appeals held that counsel's decision not to give an opening statement was a reasonable trial strategy. Daniels, 2010 WL 571841 at *2. Petitioner has failed to show that the state court's resolution of this claim was an unreasonable application of Supreme Court precedent. In addition, Petitioner has failed to show that there is a reasonable probability that the outcome of the trial would have been different had his attorney given an opening statement. See Moss v. Hofbauer, 286 F.3d 851, 863-64 (6th Cir. 2002)

---

[2] Billy Martin, best known for his several terms managing the New York Yankees, was considered one of the "most brilliant game managers" in baseball, but also one of the most notoriously combative. See Murray Chass, Billy Martin of the Yankees Killed in Crash on Icy Road, N.Y.Times, Dec. 26, 1989, at A1, D9. In contrast, Sparky Anderson, an equally successful manager of the Cincinnati Reds and Detroit Tigers, was known as a gentleman who encouraged his players to place their dirty clothes in a bin so that the clubhouse workers did not have to pick up after them. See Sparky Anderson, 1934-2010: 2 cities, 1 legend, Toledo Blade, Nov. 5, 2010.

Counsel's decision to abort his closing argument before completing it is an unusual circumstance. Defense counsel began his closing argument at 10:05 a.m. He discussed with the jury some general principles by which they should abide in deciding the case, including that they should reject any temptations to decide the case based on sympathy or emotion, and that they should not allow the dramatic autopsy photographs to impact their decision. 3/20/2008 Tr. at 36-44, Pg. ID 696-704 (Dkt. 8-7). After speaking for twelve minutes (10:17 a.m.), the court informed defense counsel that twenty minutes remained for his closing argument. Id. at 45, Pg. ID 705. Defense counsel and the trial court judge then engaged in a brief but testy exchange with defense counsel claiming that he was unaware of a time limit, seeking clarification on the time limit, and, ultimately, refusing to continue his closing argument. Id.at 45-47, Pg. ID 705-07. At 10:19 a.m., the jurors were excused. Id. at 47, Pg. ID 707. The trial court told defense counsel to let him know when he wished to resume his closing argument. Id. Defense counsel did not resume his closing argument. After twenty minutes, the jury reentered and jury instructions were provided. Id. at 47-48, Pg. ID 707-08.

On direct review, the Michigan Court of Appeals held that defense counsel's failure to complete his closing argument was neither ineffective nor prejudiced Petitioner. The state court explained:

> [D]efense counsel's decision to discontinue his closing argument likewise may be deemed a matter of trial strategy. Given that there was strong eyewitness testimony against defendant, which defense counsel was unable to shake despite good efforts, defendant had no witnesses, and trial had been difficult, it is possible that defense counsel was relying on jury sympathy and the potential perception that defendant was not receiving a fair trial in order to obtain an acquittal because he had nothing else to argue in the way of evidence.[ ] Defendant has not demonstrated that counsel's strategy was unsound. In addition, defendant has not established prejudice. Defendant has not suggested what additional arguments could have been made by defense counsel that would have resulted in a reasonable probability of a different result. …

<u>Daniels</u>, 2010 WL 571841 at *2.

Defense counsel reacted petulantly to the trial court's admonition that twenty minutes remained of his time allotment. It is possible that defense counsel's reaction was part of a strategy to persuade the jury that the deck was stacked against Petitioner and he was not receiving a fair trial. And, the Supreme Court has recognized that "it might sometimes make sense to forgo closing argument altogether." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 6 (2003). Nevertheless, the Court need not decide the reasonableness of that strategy because, even assuming that the strategy was an unreasonable one, Petitioner has not shown that the state court decision finding no resulting prejudice was contrary to or an unreasonable application of Supreme Court precedent. Petitioner fails to identify particular arguments defense counsel could have made in closing argument that may have swayed the jurors. The trial was relatively short (approximately one and a half days of testimony) and so did not require a summary of weeks of testimony. The Michigan Court of Appeals' rejection of this claim was reasonable.

**B. Sufficiency of the Evidence (Claim IV)**

Next, Petitioner argues that the evidence was insufficient to establish beyond a reasonable doubt that he was the perpetrator. He argues that the prosecution's entire case rested on the testimony of one witness, Jeanell Land, and that her testimony, absent any corroboration, was insufficient to establish that he was the perpetrator.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." <u>In re Winship</u>, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). In the habeas context, "[t]he Jackson standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" Brown v. Palmer, 441 F.3d 347, 351 (6th Cir. 2006), quoting Jackson, 443 U.S. at 324 n.16).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." McGuire v. Ohio, 619 F.3d 623, 631 (6th Cir. 2010), citing Brown v. Konteh, 567 F.3d 191, 204-05 (6th Cir. 2009). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Brown, 567 F.3d at 205, citing Jackson, 443 U.S. at 319. Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." Id. In short, "deference should be given to the trier-of-fact's verdict, as contemplated by Jackson; [then] deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." Tucker v. Palmer, 541 F.3d 652, 656 (6th Cir. 2008) (citation omitted). The Jackson standard is "exceedingly general" and therefore Michigan courts are afforded "considerable leeway" in its application. Davis v. Lafler, 658 F.3d 525, 535 (6th Cir. 2011).

Under Michigan law, to convict a defendant of first-degree murder, the prosecution must prove that the defendant intentionally killed the victim and that the killing was premeditated and deliberate. People v. Anderson, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995). Premeditation and deliberation may be established by evidence showing: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." People v. Schollaert, 486 N.W.2d 312, 318 (Mich. Ct.

App. 1992). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, <u>People v. Jolly</u>, 502 N.W.2d 177, 180 (Mich. 1993), including the identity of the perpetrator, <u>Dell v. Straub</u>, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002), and the defendant's intent or state of mind. <u>People v. Dumas</u>, 563 N.W.2d 31, 34 (Mich. 1997).

The Michigan Court of Appeals rejected Petitioner's invitation to find Land's testimony incredible because she gave a prior inconsistent statement to police and she smoked marijuana and drank alcohol the night of the shooting. <u>Daniels</u>, 2010 WL 571841 at *3. The state court held that assessing the credibility of witnesses was within the province of the jury, not the appellate court. <u>Id</u>. The court concluded that Land's testimony, by itself, was sufficient to establish Petitioner's identity. <u>Id</u>.

The Michigan Court of Appeals' conclusion is supported by the record. Petitioner challenges Land's credibility. But the Court does not have the benefit of observing Land's demeanor or voice inflections. The jury did have that benefit and obviously chose to credit Land's identification testimony. "A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court." <u>Matthews v. Abramajtys</u>, 319 F.3d 780, 788 (6th Cir. 2003), citing <u>Marshall v. Lonberger</u>, 459 U.S. 422, 434 (1983). Instead, faced with contradictory testimony, the Court "'must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" <u>McDaniel v. Brown</u>, 558 U.S. 120, 133 (2010), quoting <u>Jackson</u>, 443 U.S. at 326. Land's testimony, if credited, supported the jury's finding that Petitioner was the shooter. Habeas relief is denied on this claim.

**C. Prosecutorial Misconduct (Claim V)**

Petitioner next argues that habeas relief should be granted because the prosecutor engaged in misconduct. The alleged misconduct centers on whether the victim received a gunshot wound to the head. Petitioner alleges that the prosecutor went to elaborate lengths to falsely prove that the victim received a gunshot wound to the head. According to Petitioner, the prosecutor withheld medical records which established that the victim was not shot in the head, knowingly presented false testimony about a gunshot wound to the victim's head, provided the defense with inaccurate police reports, allowed crime scene photographs to be altered and introduced knowingly altered photographs at trial, intimidated witness Janet Land to persuade her to testify that the victim was shot in the head.

Respondent argues that this claim is procedurally defaulted and, alternatively, meritless. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." Hudson v. Jones, 351 F.3d 212, 215 (6th Cir. 2003), citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." Lambrix, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's claims.

To demonstrate a Brady violation, (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) "that evidence must have been suppressed by the State, either willfully or inadvertently;" and (3) "prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999), citing Brady v. Maryland, 373 U.S. 83 (1967). "There is no Brady violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the

evidence is available . . . from another source, because in such cases there is really nothing for the government to disclose." Coe v. Bell, 161 F.3d 320, 344 (6th Cir. 1998) (internal quotation marks omitted). A defendant does not have to show that "disclosure of the evidence would have ultimately led to an acquittal;" he must, instead "establish that in the absence of the evidence he did not receive a fair trial, 'understood as a trial resulting in a verdict worthy of confidence.'" Gumm v. Mitchell, 775 F.3d 345, 363 (6th Cir. 2014), quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995).

Petitioner alleges that Williams' gunshot wound to the head was staged and that the evidence was fabricated and witnesses convinced to lie. In support of this claim, he cites the Wayne County Medical Examiner's report stating that the victim sustained "MGSWs [multiple gunshot wounds] to the body." Medical Examiner's Report, Ex. 1 to Petition, Pg. ID 1098 (Dkt. 22-1). He argues that the report would have specified that one of the wounds was to the head if that indeed had been true. He argues that medical documents which would have established Williams was not shot in the head have been withheld from him and that the many witnesses who testified to a head wound were coached, coerced or fooled into providing false testimony.

On collateral review in state court, the trial court found unpersuasive Petitioner's argument that evidence that Williams suffered a gunshot wound to the head was fabricated. See 1/23/13 Order, Pg. ID 1401 (Dkt. 32-3). "Mere speculation and conjecture" are "simply not enough to demonstrate a Brady violation." United States v. Guzman, 571 Fed. App'x 356, 365 (6th Cir. 2014). Accord Henness v. Bagley, 644 F.3d 308, 325 (6th Cir. 2011) (speculation about the potential that favorable evidence was withheld is, by itself, insufficient to establish a Brady violation). Here, Petitioner's arguments are based upon speculation about a far-reaching

conspiracy to manufacture a head wound. Nothing more. He fails to show prosecutorial misconduct and habeas relief is denied.

## D. Judicial Misconduct (Claim VI)

Petitioner next argues that he was denied a fair trial by the trial court's management of the proceedings and judicial rulings that, Petitioner's argues, evidenced judicial bias. Specifically, Petitioner maintains that the trial judge engaged in misconduct by openly arguing with defense counsel and by his handling of defense counsel's closing argument.

"[T]he Due Process Clause clearly requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or interest in the outcome of his particular case." Bracy v. Gramley, 520 U.S. 899, 904-05 (internal quotation marks and citation omitted). An impartial judge is a necessary component of a fair trial. In re Murchison, 349 U.S. 133, 136 (1955). The Supreme Court established the standard for assessing claims of judicial bias in Liteky v. United States, 510 U.S. 540 (1994). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Id. at 555. A judge's remarks that are "critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." Id. Even a judge's expressions of "impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display" do not, standing alone, establish a due process violation. Id. at 555-56.

The trial court's expressions of impatience with defense counsel were limited and a reasonable response to defense counsel's combative style. "A terse or frustrated exchange" does not constitute bias so long as it does not reveal an underlying bias. Ajanel-Gonzalez v. Sessions, 685 Fed. App'x 419, 428 (6th Cir. 2017). Here, the trial court's interactions with defense counsel

did not undermine defense counsel's credibility and did not demonstrate a deep-seated antagonism against Petitioner. Similarly, the trial court's actions during closing arguments did not evidence a high degree of favoritism or antagonism. The trial court advised defense counsel that he had twenty minutes remaining in closing argument, which would have provided him a total of approximately thirty minutes, about the same as the time used by the prosecutor for her closing argument. The record shows that the trial court judge did not, as Petitioner alleges, exit the courtroom during defense counsel's closing argument. Instead, when defense counsel refused to continue with his closing argument, the trial court dismissed the jury and then exited the courtroom. The trial court's failure to sit in silence in the courtroom in no way evidences any bias or antagonism. Habeas relief is denied.

**E. Jury Instructions (Claim VII)**

Petitioner raises several claims that jury instruction-related deficiencies violated his right to due process. He argues that the substance of the jury instructions were insufficient in four ways: the trial court gave an incorrect instruction on the intent element of first-degree murder; the trial court omitted an element of second-degree murder; the trial court referenced a potential manslaughter verdict, but failed to instruct the jury on the elements of manslaughter; and the trial court failed to give an <u>Allen</u> instruction. Second, Petitioner challenges the procedures associated with the jury instructions: the trial court failed to verify that the court reporter was present before responding to the jurors' note, resulting in <u>ex parte</u> communications with the prosecution and jury regarding the number of jurors to keep; trial court left the bench without noting defense counsel's objections; and the trial court did not provide defense counsel an opportunity to look at or approve the verdict form.

The Court first considers Petitioner's claims regarding the substance of the jury instructions. "It is a fundamental Constitutional law that no one may be convicted of a crime absent proof beyond a reasonable doubt of every fact necessary to constitute that crime." Glenn v. Dallman, 686 F.2d 418, 420 (6th Cir. 1982). To show that a jury instruction violates due process, a habeas petitioner must demonstrate both that the instruction was ambiguous and that there was 'a reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." Waddington v. Sarausad, 555 U.S. 179, 190-91 (2009) (citations omitted). A petitioner is entitled to habeas relief only if the defective jury instruction "so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 147 (1973). A federal court may not grant the writ of habeas corpus on the ground that a jury instruction was incorrect under state law, Estelle v. McGuire, 502 U.S. 62, 71-72 (1991), and "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." Henderson v. Kibbe, 431 U.S. 145, 155 (1977). The jury instruction "must be considered in the context of the instructions as a whole and the trial record." Estelle, 502 U.S. at 72. A state court's finding that challenged jury instructions "adequately reflected the applicable state law and corresponding state charges" is binding on federal habeas review. White v. Steele, 629 F. App'x 690, 695 (6th Cir. 2015). "The exception is when the instruction is so flawed as a matter of state laws as to "infect[] the entire trial' in such a way that the conviction violates federal due process." Rashad v. Lafler, 675 F.3d 564, 569 (6th Cir. 2012), quoting Kibbe, 431 U.S. at154.

Petitioner argues that the trial court gave an incorrect instruction on the intent element of first-degree murder. Michigan's standard jury instruction for first-degree premeditated murder contains four elements: (1) that the defendant caused the death of the victim; (2) that the defendant

intended to kill the victim; (3) that the intent to kill was premeditated; and (4) that the killing was deliberate. <u>See</u> Mich. Crim. Jury Instructions 16.1(6) at 16-3-4 (2d ed.). The trial court instructed the jury that Petitioner must have intended to kill the victim, that the intent to kill was thought out beforehand, and that the killing was deliberate. 3/20/2008 Tr. at 56, Pg. ID 716 (Dkt. 8-7). Further the court instructed that first-degree premeditated murder is a specific intent crime, requiring a showing of only "one intent at the time of that act, and that is to commit the crime of murder, or to kill that person." <u>Id</u>. Petitioner fails to identify specifically what portion of the trial court's instruction fails to convey the intent element of first-degree premeditated murder. The instructions given comply with Michigan's standard criminal jury instructions. Relief is denied on this claim.

Petitioner next argues that the trial court omitted an element of second-degree murder. In Michigan, the elements of the lesser-included offense of second-degree murder are: (1) a death; (2) caused by an act of the defendant; (3) with malice; and (4) without justification. <u>People v. Mendoza</u>, 664 N.W.2d 685, 689 (2003). Malice is defined as "an intent to commit an unjustified and inexcusable killing[,]" <u>id</u>. at 691 (citation omitted), or "the wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." <u>People v. Werner</u>, 659 N.W.2d 688, 692 (2002) (internal quotation marks and citation omitted). Although the trial court's instruction on second-degree murder did not use the word "malice," the instruction adequately conveyed the element of malice by requiring a finding that Petitioner had the intent to commit serious bodily harm or the intent to do an act that "created a very high risk of death or great bodily harm knowing that death or such harm would be the likely consequence of his action." 3/20/2008 Tr. at 57, Pg. ID 717.

Petitioner next challenges the trial court's reference to a potential manslaughter verdict, but failed to instruct the jury on the elements of manslaughter. The record does not support this

claim because the trial court instructed the jury on the elements of manslaughter. This claim is denied.

Petitioner next argues that the trial court erred in failing to give an <u>Allen</u> charge when the jury reported after three hours of deliberations that they were at an impasse. "[A] trial court may properly encourage a deadlocked jury to continue its deliberations and attempt to reach a verdict." <u>United States v. Aloi</u>, 9 F.3d 438, 443 (6th Cir. 1993), citing <u>Allen v. United States</u>, 164 U.S. 492, 501-02 (1896). "A charge that strays too far from the charge approved in <u>Allen</u> will rise to the level of a constitutional violation only if 'in its context and under all the circumstances, [the charge] ... was coercive.'" <u>Id</u>. quoting <u>Williams v. Parke</u>, 741 F.2d 847, 850 (6th Cir.1984) (additional internal quotation omitted). In this case, the trial court's instruction to the jurors to continue deliberation was not coercive. The trial court reminded the jurors to approach deliberations with an open mind, but cautioned them not to change their minds simply for the purpose of reaching a verdict. 3/20/2008 Tr. at 76-77, Pg. ID 736-37. The Court finds no error in the trial court's instruction.

The Court now turns to Petitioner's challenges to the procedures associated with the jury instructions. First, Petitioner argues that the trial court failed to verify that the court reporter was present before responding to the jurors' note and that this error constituted an improper <u>ex parte</u> communication. An <u>ex parte</u> communication is a "communication between counsel and the court when opposing counsel is not present." Black's Law Dictionary (10th ed. 2014). The situation presented here did not involve an <u>ex parte</u> communication as it is apparent from Petitioner's claim and the record that neither defense counsel nor the prosecutor were absent during the court's communication with the jury. <u>See</u> 3/20/08 Tr. at 79, Pg. ID 739.

Related to his _ex parte_ communication claim, Petitioner argues that the trial court judge left the bench without noting defense counsel's objections. The trial court dismissed defense counsel's objection, noting that an _ex parte_ communication did not occur because both attorneys were present. The judge then left the courtroom. Defense counsel continued to state his objections on the record. While the trial judge should have remained in the courtroom for the objections, the court already had found no _ex parte_ communication. Counsel also lodged an objection to the trial court's failure to give an _Allen_ charge. As discussed above, Petitioner has failed to show that the court's failure to give a specific _Allen_ charge implicated his right to due process or a fair trial. Relief is denied on this claim.

Finally, Petitioner argues that the trial court improperly failed to provide defense counsel an opportunity to review or approve the verdict form. Petitioner does not allege that the verdict form was inaccurate of incorrect. He therefore has not shown that his due process rights were implicated by counsel's failure to review the verdict form.

## F. Ineffective Assistance of Appellate Counsel (Claim VIII)

Petitioner raises a claim that his appellate attorney was ineffective in failing to raise claims raised in this habeas petition but not raised on direct appeal. The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. _Jones v. Barnes_, 463 U.S. 745, 754 (1983). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." _United States v. Perry_, 908 F.2d 56, 59 (6th Cir. 1990).

The claims raised in this petition and on collateral review in state court are meritless. Appellate counsel need not raise non-meritorious claims on appeal. _Shaneberger v. Jones_, 615

F.3d 448, 452 (6th Cir. 2010), citing Greer v. Mitchell, 264 F.3d 663, 676 (6th Cir. 2001). Accordingly, the Court will deny habeas corpus relief on this claim.

**G.  Cumulative Effect of Alleged Errors (Claim IX)**

Petitioner argues that the cumulative effect of the errors alleged in his petition violated his right to a fair trial.  On habeas review, a claim that the cumulative effect of errors rendered a petitioner's trial fundamentally unfair is not cognizable.  Sheppard v. Bagley, 657 F.3d 338, 348 (6th Cir. 2011), citing Moore v. Parker, 425 F.3d 250, 256 (6th Cir. 2005). Therefore, Petitioner is not entitled to relief on this claim.

**H.      State Court's Application of State Court Rule (Claim X)**

Finally, Petitioner argues that the state court erred in finding that he did not satisfy the "cause and prejudice" requirement under Michigan Court Rule 6.508(D)(3) and his procedural default, therefore, should have been excused by the state court.  Respondent asserts that this claim is not cognizable on federal habeas review.

"The Sixth Circuit consistently [has] held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." Cress v. Palmer, 484 F.3d 844, 853 (6th Cir. 2007).  See Pennsylvania v. Finley, 481 U.S. 551, 557 (1987) (holding that states have no constitutional obligation to provide post-conviction remedies); Greer v. Mitchell, 264 F.3d 663, 681 (6th Cir. 2001) ("[H]abeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief."); Kirby v. Dutton, 794 F.2d 245, 246 (6th Cir. 1986) (holding that habeas corpus is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings).  Even if the state court improperly refused to review the merits of Petitioner's claims because it erred in applying the state's own post-conviction review procedures,

Petitioner's federal constitutional rights were not implicated because he had no constitutional right to post-conviction review.

## IV. CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that none of the claims in the habeas petition warrant relief. Therefore, the Court denies a certificate of appealability.

## V. LEAVE TO PROCEED IN FORMA PAUPERIS

The standard for granting an application for leave to proceed in forma pauperis (IFP) is a lower standard than the standard for certificates of appealability. Foster v. Ludwick, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002), citing United States v. Youngblood, 116 F.3d 1113, 1115 (5th Cir. 1997). While a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. Id. at 764-765; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24(a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster, 208 F.Supp.2d at 765. The Court finds that

an appeal could be taken in good faith and Petitioner may proceed <u>in forma pauperis</u> on appeal.

<u>Id</u>.

## VI. CONCLUSION

For the reasons set forth above, the Court denies the petition for writ of habeas corpus, declines to issue a certificate of appealability, and grants leave to appeal <u>in forma pauperis</u>.

SO ORDERED.

Dated:  March 13, 2018                               s/Mark A. Goldsmith
      Detroit, Michigan                          MARK A. GOLDSMITH
                                             United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 13, 2018.

s/Karri Sandusky
Case Manager